

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 20, 2007

**By Hand**
The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
500 Pearl Street - Room 920
New York, NY 10007

      Re:    *United States v. Bryan Noble*
              07 Cr. 284 (KMK)

Dear Judge Karas:

      The Government respectfully submits this letter in opposition to the pre-trial motions filed by the defendant, Bryan Noble. In his memorandum, the defendant moves: (1) to dismiss the indictment based on a constitutional challenge to Title 18, United States Code, Section 922(g) on its face and as applied; (2) to suppress the firearm recovered; (3) to suppress his post-arrest statements;[1] (4) for disclosure of evidence the Government intends to use at trial pursuant to Rule 404(b) of the Federal Rules of Evidence; and (5) for disclosure of *Brady* and/or *Giglio* material and other discovery. For the reasons set forth below, the defendant's motions seeking to dismiss the indictment and suppress the firearm recovered from an automobile should be denied. Moreover, the defendant's motions regarding disclosure of 404(b) evidence is premature, and the Government knows of no *Brady* information at this time. However, the Government does consent to a limited hearing regarding the admissibility of the defendant's post-arrest statements as set forth below.

## Factual Background

      On or about June 14, 2006, two officers employed by the New York City Police Department received a radio call while on regular patrol in a marked car in the Bronx.

---

      [1] To be clear, the Government understands that the defendant is seeking to suppress the post-arrest statements he made to law enforcement that are summarized in a DEA 6 report, which was provided to counsel. As set forth in the Complaint, prior to arriving at the precinct, the defendant asked one of the officers if he could get his gun back. The defendant has made no factual or legal challenges to this statement, and as such, there is no need for a hearing on the admissibility of this statement.

The Honorable Kenneth M. Karas
July 20, 2007
Page 2

Complaint, ¶ 2(a). The radio call stated, in substance and part, that gun shots had been fired in the area of 4422 Edison Avenue in the Bronx, New York. *Id.* While responding to the area where the shots were fired, the officers received a second radio call stating, in substance and part, that the suspect involved in the shooting was traveling southbound on Baychester road in a tan grey Jeep Cherokee. *Id.* After receiving this second transmission, one of the officers observed a car matching the description from the radio transmission, being driven by a black male southbound on Baychester Avenue. *Id.* at ¶ 2(b).

After spotting the car from the radio transmission, the officers began to follow the Cherokee driven by Noble. *Id.* at ¶ 2(c). When the officers began to follow him, Noble sped up and began to drive erratically. *Id.* During the chase, the officers briefly lost sight of Noble, but followed the direction in which he was driving. *Id.* at ¶ 2(c)-(d). As they drove, the officers saw the car Noble was driving crashed on the side of the road, and observed that the driver's door was open but no one was inside the car. *Id.* A civilian witness who watched the crash and saw Noble get out of and run from the car assisted the police in identifying Noble. *Id.* Once the officers arrested Noble, they returned to the location where Noble crashed the Jeep Cherokee and recovered a .40 caliber Hi-Point handgun with a defaced serial number behind the driver's seat. *Id.* at ¶ 2(e). Noble initially faced charges in Bronx County on charges relating to these events.

The defendant was arrested by the DEA on the basis of a Complaint on or about December 12, 2006, and was detained following an appeal to the Honorable Jed S. Rakoff, United States District Court Judge. On April 11, 2007, the defendant was indicted on one count of possessing a firearm after having been convicted of a felony in violation of Title 18, United States Code, Section 922(g). Because the defendant had been convicted previously of at least three serious drug offenses, the Indictment returned included the enhanced penalty provisions of Title 18, United States Code, Section 924(e).

**Argument**

A.   The Defendant's Motion To Dismiss the Indictment Should be Denied

Noble argues that Title 18, United States Code, Section 922(g)(1) is unconstitutional, as the statute criminalizes conduct with no relationship to interstate commerce. This argument is contrary to well-established law, and the Court should deny the motion.

The defendant is charged with a violation of Section 922(g)(1) of Title 18, and the enhanced penalty provisions of Title 18, United States Code, Section 924(e). Section 922(g)(1) prohibits the possession of a firearm by a convicted felon, and requires that he possess a firearm "in or affecting" interstate commerce. In order to prove the interstate commerce requirement, the Government need only show a minimal nexus to interstate commerce, and it is sufficient that the

The Honorable Kenneth M. Karas
July 20, 2007
Page 3

firearm had traveled at some time in interstate commerce. *See, e.g.*, *United States* v. *Jones*, 16 F.3d 487, 491 (2d Cir. 1994) (holding that there need only be a minimal nexus that firearm has traveled, at some time, in interstate commerce); *United States* v. *Gaines*, 295 F.3d 293, 302 (2d Cir. 2002) (same); *United States* v. *Santiago*, 238 F.3d 213, 216 (2d Cir. 2001) (*per curiam*) (same); *United States* v. *Sanders*, 35 F.3d 61, 62 (2d Cir. 1994) (per curiam) (finding it sufficient to show that firearm was manufactured out of state); *United States* v. *Sorrentino*, 72 F.3d 294, 296 (2d Cir. 1995) (holding that "'proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce'") (quoting *Scarborough* v. *United States*, 431 U.S. 563, 564 (1977)).[2]

In support of his argument that the statute is unconstitutional and lacks a nexus to interstate commerce, Noble relies on *United States* v. *Morrison*, 529 U.S. 598 (2000), *Jones* v. *United States*, 529 U.S. 848 (2000), and *United States* v. *Bass*, 404 U.S. 336 (1971). However, Noble fails to mention that the Second Circuit squarely rejected this argument in *United States* v. *Santiago*, 238 F.3d 213, 217 (2d Cir. 2001). See *United States* v. *Santiago*, 238 F.3d at 217 (reiterating the Court's pre-*Lopez* holding that Section 922(g) is "properly within Congress's authority under the Commerce Clause" and reviewing numerous other circuit court decisions that have concluded the same). In *Santiago*, the Court of Appeals specifically held that neither *Morrison* nor *Jones* "altered the settled law in this Circuit," and further stated that "*Morrison* does not alter the principles under the Commerce Clause that led us to uphold § 922(g) in *Sorrentino*." *Id.* at 216. In its analysis of the *Jones* decision and its applicability to a challenge against Section 922(g), the Court of Appeals noted that *Jones* "involved the interpretation of a different criminal statute altogether," and therefore "certainly did not fashion any new rule altering the extent of the nexus to interstate commerce required by the jurisdictional element of 18 U.S.C. § 922(g)." *Id.* at 217. Finally, contrary to Section 922(g), the Supreme Court in *Bass* reasoned that the statute in question was ambiguous, adopted a narrow view of the statute, and set aside the conviction because the Government failed to prove the "requisite nexus with interstate commerce." See *United States* v. *Bass*, 404 U.S. at 347. Contrary to this case, there is well-settled law on the clarity and constitutionality of the statute, as well as on the elements that the Government must prove at trial, and *Bass* therefore is easily distinguishable. For all of these

---

[2] On a motion to dismiss an indictment, the Court must presume the factual allegations in the Indictment as true. See *United States* v. *Clarke*, No. 05 Cr. 017(DAB), 2006 WL 3615111, *1 (S.D.N.Y. Dec. 7, 2006). Here, the Complaint alleges that the .40 caliber Hi-Point recovered from the car was not manufactured in the State of New York, *see* Complaint, ¶ 4, and the grand jury returned an Indictment alleging the same. Accordingly, the charges have properly alleged that the firearm recovered traveled in interstate commerce.

The Honorable Kenneth M. Karas
July 20, 2007
Page 4

reasons, the Court should deny this motion.[3]

      B.      The Defendant's Motion To Suppress the Firearm Recovered from the Car Should be Denied as the Firearm was Properly Seized on Many Grounds

Ignoring the series of events leading up to the car chase and his arrest, which include Noble discharging his firearm more than once and fleeing the scene of the shooting in the car from which the firearm was recovered, *see, e.g.*, Complaint ¶ 2(a)-(e), Noble argues that the .40 caliber Hi-Point recovered should be suppressed as his arrest was unlawful and the car was searched without a warrant. The facts and circumstances surrounding Noble's arrest provided the police with more than ample probable cause to believe that Noble had just committed the shooting described in the radio call. Moreover, after seeing the police in their marked patrol car, Noble attempted to flee, which only enhanced the officers' belief that Noble had committed the shooting and that there was evidence of the shooting in the car. Accordingly, the officers were justified in searching the car under the "automobile exception" to the warrant requirement. Alternatively, the police were also justified in searching the car as Noble abandoned it after crashing the car following the police chase and running from the scene. For these reasons, Noble's argument lacks merit, and the Court should deny the motion to suppress the firearm without an evidentiary hearing.

---

    [3] Within the context of this constitutional challenge, and citing only an Eighth Circuit case in support of his argument, the defendant also argues that Section 922(g)(1) denies him the right to a trial by an impartial jury because establishing that he had at least one prior felony is an element of the crime. *See* Defendant's Br. at 2-4. But "[w]here the prior conviction is essential to proving the crime, it is by definition not prejudicial." *See United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993); *see also United States v. Belk*, 346 F.3d 305, 310 (2d Cir. 2003). Accordingly, Noble's argument fails. Moreover, the Second Circuit recently held that, "the bifurcation of the elements of a single-count felon-in-possession trial, absent the government's consent, is generally error." *See United States v. Amante*, 418 F.3d 220, 224 (2d Cir. 2005). This case does not present one of the unusual circumstances in which presenting evidence of the prior convictions, a narcotics-related offense, is unduly prejudicial to the defendant. *See, e.g., id.* at 225; *see also, e.g., United States v. Belk*, 346 F.3d at 311.

    Finally, Noble seemingly argues that his prosecution in federal court is inappropriate, as he was initially arrested and indicted in New York State Supreme Court, Bronx County, for charges arising out of the same conduct, and therefore, Noble reasons, the statute is "unconstitutional as applied" to him. *See* Defendant's Br. at 7-8. Again, this argument attacks the constitutionality of the statute, which has been upheld time and time again as set forth above. Moreover, the defendant himself took the action necessary to establish federal jurisdiction in this case, *i.e.*, possessing a gun following not one, but three felony convictions.

The Honorable Kenneth M. Karas
July 20, 2007
Page 5

1. Applicable Law

Law enforcement officers may conduct a warrantless search of an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004); *see also United States v. Howard*, No. 06-457-cr, — F.3d —, 2007 WL 1598060, *6 (2d Cir. June 5, 2007). The "automobile exception" to the warrant requirement stems from both the reduced expectation of privacy due to the "configuration, use, and regulation of automobiles," *Arkansas v. Sanders*, 442 U.S. 753, 761 (1979), *overruled on other grounds*, *California v. Acevedo*, 500 U.S. 565 (1999), and from the inherent mobility of vehicles, which often creates exigent circumstances that make obtaining a warrant impractical. *Pennsylvania v. Labron*, 518 U.S. 938 (1996) (per curiam). Whether probable cause exists requires a "practical, common-sense decision, whether, given all the circumstances . . . there is a fair probability that contraband . . . will be found in a particular place . . . '[o]nly a probability or substantial chance of criminal activity, not an actual showing of such activity' is necessary." *United States v. Harwood*, 998 F.2d 91, 96 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 243 n. 13 (1983)). Additionally, "[a]s the Supreme Court has repeatedly explained, 'probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts.'" *United States v. Gaskin*, 364 F.3d at 456 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

Indeed, the scope of a warrantless search of a car conducted under the automobile exception extends as far as "a magistrate could legitimately authorize by warrant." *United States v. Ross*, 456 U.S. 798, 825 (1982). The police may search every part of a vehicle and containers within the vehicle that may conceal the object of the search so long as they have a generalized belief that the car contains contraband somewhere inside. *Id.*; *see also, e.g., United States v. Harwood*, 998 F.2d at 97 (finding warrantless search of door panels permissible as LSD in blotter form can be stashed anywhere in car).

Moreover, there is no expectation of privacy in abandoned property. *See Abel v. United States*, 362 U.S. 217, 241 (1960) (holding warrantless seizure of items abandoned in hotel wastepaper basket did not violate Fourth Amendment because the defendant had already checked out and because "[t]here can be nothing unlawful in the Government's appropriation of . . . abandoned property."). Furthermore, an individual forfeits any reasonable expectation of privacy in any abandoned property. *See Gudema v. Nassau County*, 163 F.3d 717, 722 (2d Cir. 1998) (search of abandoned property does not violate privacy interest even if ownership or property interest in item exists because "mere ownership of property does not establish a legitimate expectation of privacy unless the owner vigilantly protects the right to exclude others").

2. Discussion

The police properly searched Noble's car without a warrant on two grounds: (1) probable

The Honorable Kenneth M. Karas
July 20, 2007
Page 6

cause existed at the time of the arrest to believe that contraband and/or evidence of the shooting would be found in the car; and (2) when he ran from the car and left the driver's door open, Noble abandoned the car on the side of the road and forfeited his privacy interest in the car. For these reasons, the recovery of the firearm fell well within the parameters of protection that the Fourth Amendment provides.

Astonishingly, Noble argues that the police had "no reasonable suspicion of criminal activity by the defendant and after he allegedly fled, they unlawfully pursued him." *See* Defendant's Br. at 12; *see also id.* at 10 ("The officers who approached Mr. Noble with their guns drawn and who subsequently chased him could not have observed him doing anything that could have given them reasonable or probable cause to believe that he was or had been involved in any criminal activity."). Perhaps this is because Noble completely ignores the facts and circumstances leading up to the car chase involving Noble and his eventual arrest.

For example, as set forth in the Complaint, two officers in a marked car were on patrol in the Bronx, New York when they received a radio call indicating that shots were fired in the vicinity of 4422 Edison Avenue in the Bronx. *See* Compl., ¶ 2(a). While responding to the location where the shots were fired, the officers received a second radio call indicating that a *suspect in the shooting* was traveling southbound in a tan grey Cherokee on Baychester Road. *Id.* at ¶ 2(b) (emphasis added). At this early stage, the officers were aware that they were responding to a shooting, and that the suspect of the shooting had fled in a car with a specific description. Without more, the officers would be justified in searching the car without a warrant pursuant to the automobile exception had it been stopped at that moment without more, as it is reasonable to believe that contraband, *i.e.*, a firearm, would be recovered in a car driven by a suspect in a *shooting*.

However, the probable cause analysis is *strengthened* by the additional facts developed prior to the search of the car and the recovery of the firearm. Upon spotting the Jeep Cherokee described by the radio run, the officer driving the police car began to follow it. *Id.* at ¶ 2(c). After the police car began to follow him, Noble sped up and began driving erratically. *Id.* At this moment, the officers knew that shots were fired, that the suspect in the shooting left the scene in a specific vehicle, that they spotted the specific vehicle being driven by an individual who matched the description of the shooting suspect, and that once they began to follow the car, the individual began to speed up and drive erratically. Again, at this point, without more, the Government submits that there was clear probable cause to believe that there may have been contraband or evidence of the shooting in the car.

Additional facts fortify the conclusion that the officers had probable cause to believe that car may have contained contraband. For example, following the start of the chase between Noble and the police, the police continued to follow Noble and the direction in which he was driving. *Id.* at ¶ 2(d). The chase eventually led the police to the discovery of the Jeep Cherokee crashed

The Honorable Kenneth M. Karas
July 20, 2007
Page 7

on the side of the road, with the driver's side door open, and no one inside of the car. *Id.* With the assistance of a civilian witness who observed the car crash, and watched as the driver left the car and began to run away, the officers located Noble, placed him under arrest, and then returned to the car. *Id.* At this point, probable cause to believe that contraband or evidence of a crime may be found in the Jeep Cherokee had only been strengthened, and one of the officers searched the car and recovered the firearm. There can be no question that the officer acted well within the confines of the automobile exception and that clear probable cause existed justifying the search. Moreover, Noble's declaration does not provide any facts to contradict those demonstrating probable cause, and therefore a hearing is not necessary to resolve this issue.

Alternatively, by running *away from* the car after the police chase, and leaving it on the side of a public street with the driver's door open – all in an attempt to avoid apprehension – Noble abandoned the car and any Fourth Amendment protections with it. *See United States* v. *Libbett*, No. 05-Cr-6069L, 2006 WL 2620049, *10 (W.D.N.Y. Sept. 13, 2006) (adopting the Magistrate Judge's finding that the defendant's flight on foot from the police following a traffic stop, leaving the door to the car open and the engine running, "constituted an abandonment of the automobile, and a concomitant abandonment of any expectation of privacy he may have had in the vehicle") (citing cases). Again, Noble failed to set forth any facts contesting that he took actions resulting in his abandonment of the car and no hearing is required on this issue.

For these reasons, the Government respectfully requests that the Court deny the motion to suppress the firearm without a hearing.

    C.    <u>The Government Consents to a Limited Hearing on the Admissibility of the Defendant's Post-Arrest Statements</u>

It is well settled that a suspect must be advised of the rights specified in *Miranda* v. *Arizona*, 384 U.S. 436, 479 (1966), before he may be subject to custodial interrogation. Having been so advised, a suspect may, of course, waive his *Miranda* rights and agree to be interviewed. To prove a valid waiver, the Government must show that the waiver was voluntary, and that the defendant was aware of the rights being waived and the consequences of waiving those rights. *See United States* v. *Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). The Government must prove waiver by a preponderance of the evidence. *Colorado* v. *Connelly*, 479 U.S. 157, 168 (1986). In his declaration, the defendant claims that he was not properly advised of his rights prior to being questioned. The Government disputes this contention, and consents to an evidentiary hearing on this limited issue.

    D.    <u>The Defendant's Request for Brady/Giglio Information and Disclosure of 404(b) Evidence</u>

The defendant requests that the Government state whether it intends to introduce "similar

The Honorable Kenneth M. Karas
July 20, 2007
Page 8

act" or other evidence pursuant to Fed.R.Evid. 404(b) within a reasonable time prior to trial.

The Government intends to provide notice of any Rule 404(b) evidence it intends to offer no later than fourteen days before the beginning of trial. The Government respectfully submits that this is more than adequate under the governing law in this Circuit, and that defendant's motion should be denied. Also, the Government reserves the right to provide notice during trial if new 404(b) material arises and "the court excuses pretrial notice on good cause shown." Fed. R. Evid. 404(b).

In his notice of motion, but without expanding on the request in his memorandum, Noble seeks an order directing the pre-trial disclosure of exculpatory and impeachment material, and any 911/radio run transmissions relevant to this case. The Government is unaware of any *Brady* material at this time, but is mindful of its continuing obligations and will promptly produce any such material should it become available. Noble has also moved for pre-trial disclosure of *Giglio* material. The Government intends to produce any impeachment materials for its witnesses at the time it provides counsel with material pursuant to Title 18, United States Code, Section 3500. At this time, the Government intends to make that production on the Friday prior to trial, consistent with its standard practice.

With respect to Noble's claim that he has not received any 911 calls or radio run transmissions relevant to the case, *see* Defendant's Br. at 10-11, the Government produced a Sprint print out of the radio run to the defense on May 1, 2007. At the last conference, counsel requested copies of 911 calls. The Government informed both the Court and counsel at that time that it had complied with its Rule 16(a) obligations to date. Although counsel has again requested the 911 calls and radio run transmissions, the Government does not have them in its possession. The Government is aware of its continuing obligations under Rule 16(a), and should we obtain additional discovery, we will promptly produce it to the defense.

The Honorable Kenneth M. Karas
July 20, 2007
Page 9

## Conclusion

     For all of these reasons, the Court should deny the defendant's pre-trial motions regarding the constitutionality of Title 18, United States Code, Section 922(g), the suppression of the firearm, and the request for 404(b) evidence and other discovery. The Government does consent to a hearing on the issue of whether the defendant was properly advised of his *Miranda* rights prior to providing a post-arrest statement to law enforcement.

                                              Respectfully submitted,

                                              MICHAEL J. GARCIA
                                              United States Attorney

                          By: *Rebecca Monck Ricigliano*
                               Rebecca Monck Ricigliano/ Brendan R. McGuire
                               Assistant United States Attorneys
                               212.637.2486/2220

cc:    Barry Krinsky, Esq.
        (via fax)