UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

Nº 07 Cr. 284 (RJS)

———————————

UNITED STATES OF AMERICA,

AGAINST

BRYAN NOBLE,

Defendant.

———————————

MEMORANDUM AND ORDER
May 7, 2008

———————————

RICHARD J. SULLIVAN, District Judge:

Indictment 07 Cr. 384 charges defendant Bryan Noble with possession of a firearm "in or affecting commerce" after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Noble now moves (1) to dismiss the indictment on the grounds that § 922(g) is unconstitutional on its face and as applied; (2) to suppress the firearm recovered from the vehicle he was driving; (3) to suppress his post-arrest statements; and (4) for disclosure of evidence pursuant to Rule 404(b) of the Federal Rules of Evidence, *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the Jencks Act, 18 U.S.C. § 3500. For the reasons that follow, defendant's motions are denied in their entirety.

I. BACKGROUND[1]

On June 14, 2006, police officers of the New York Police Department ("NYPD") received a radio call that gun shots had been fired in the vicinity of 4422 Edson Avenue in the Bronx. (Compl. ¶ 2(a).) As the responding officers were en route to that location, they received a second radio call informing them that a suspect in the shooting

---

[1] The facts are taken from the complaint and from the suppression hearing held on March 26, 2008, and are undisputed unless otherwise noted.

was traveling southbound on Baychester Road in a "tan grey" Jeep Cherokee (the "Jeep"). (*Id.*) Shortly thereafter, the police spotted a vehicle matching the description of the Jeep driving south on Baychester Road. (*Id.* ¶ 2(b).) After seeing the Jeep, the police began to follow it. (*Id.* ¶ 2(c).) The driver then sped up, began driving erratically, and, as a result, the police briefly lost sight of the Jeep. (*Id.*) The police officers followed in the same direction as the Jeep, and subsequently saw it crashed on the side of the road. (*Id.* ¶ 2(d).) The driver was not inside, and the driver's door was open. (*Id.*) An individual who witnessed the crash told the officers that the driver had exited the car and run away, then directed the police to the driver. (*Id.* ¶ 2(d).) The driver, defendant Noble, was subsequently arrested. (*Id.* ¶ 2(e).) After placing defendant under arrest, the police returned to the Jeep, which had been secured by other officers. (*Id.*) One of the officers who arrested defendant then searched the Jeep and found a .40 caliber Hi-Point handgun behind the driver's seat. (*Id.*)

The government alleges that, during the drive from the scene of the arrest to the station house, defendant asked one of the officers "if he could get his gun back." (*Id.* ¶ 3; *see* Transcript of March 26, 2008 Evidentiary Hearing ("Tr.") at 8-13.) Thereafter, according to the government, defendant made statements to interviewing officers at the station house after waiving his *Miranda* rights. (Tr. at 38-43.)

With regard to the handgun found in the Jeep, the NYPD ultimately determined that the weapon "is not and has never been manufactured in the State of New York." (Compl. ¶ 4.) Based on a review of criminal records, Special Agent Eric Baldus of the Drug Enforcement Administration ("DEA") also later determined that, in April 1983, defendant was convicted of a Class B felony, criminal possession of a controlled substance in the third degree, in the Supreme Court of the State of New York, Kings County. (*Id.* ¶ 5.)

II. DISCUSSION

A. Defendant's Motion to Dismiss

Defendant argues that the indictment should be dismissed because 18 U.S.C. § 922(g) is unconstitutional, both on its face and as applied to him, in that its application criminalizes the act of carrying a firearm where there is no sufficient relationship between the act and interstate commerce. (Def.'s Mem. at 2-8.) For the reasons that follow, the motion is denied.

1. Legal Standard

Section 922(g)(1) makes it a crime for an individual who has been convicted of a felony to "possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). It is well-established in this Circuit that § 922(g) requires only a "minimal nexus" to interstate commerce, which can be satisfied by a showing that the firearm at issue traveled at any time in interstate commerce. *See United States v. Gaines*, 295 F.3d 293, 302 (2d Cir. 2002); *United States v. Santiago*, 238 F.3d 213, 216-17 (2d Cir. 2001); *United States v. Palozie*, 166 F.3d 502, 505 (2d Cir. 1999); *United States v. Sorrentino*, 72 F.3d 294, 297 (2d Cir. 1995). "Testimony that a weapon was manufactured out of state is generally sufficient to meet the interstate commerce element." *United States v. Jones*, 16 F.3d 487, 491 (2d Cir. 1994) (citation omitted); *see also United States v. Sanders*, 35 F.3d 61, 62-

63 (2d Cir. 1994) (collecting cases holding that the "in commerce element of § 922(g) is satisfied where ammunition possessed by defendant had been manufactured elsewhere and passed through interstate commerce before defendant possessed ammunition"); *United States v. Chin*, 910 F. Supp. 889, 894 (E.D.N.Y. 1995) ("Evidence that ammunition was manufactured outside of New York State, and that defendant was found in possession of that ammunition within the State, compels the conclusion that the ammunition crossed state lines at some point.").

(a) § 922(g) is Constitutional On Its Face

Defendant cites several cases, notably *United States v. Lopez*, 514 U.S. 549 (1995), *United States v. Morrison*, 529 U.S. 598 (2000), *Jones v. United States*, 529 U.S. 848 (2000), and *United States v. Bass*, 404 U.S. 336 (1971), for the proposition that § 922(g) is unconstitutional because a showing that the firearm traveled in interstate commerce at some point is not enough to satisfy the "in or affecting commerce" prong of § 922(g). (Def.'s Mem. at 2-8.) However, defendant's arguments are unavailing, given that the Second Circuit has repeatedly found that § 922(g) satisifies the requirements of the Commerce Clause. *See Gaines*, 295 F.3d at 302 (rejecting defendant's Commerce Clause challenge, noting that neither *Morrison* nor *Jones* "requires us to revisit our prior holding that only a minimal nexus with interstate commerce is necessary under § 922(g)"); *Santiago*, 238 F.3d at 216 (holding that § 922(g)'s jurisdictional hook satisfies the Commerce Clause); *Palozie*, 166 F.3d at 504 (rejecting the contention that § 922(g) "requires more than the *de minimis* nexus of a single interstate transfer of the firearm"); *Sorrentino*, 72 F.3d at 297 (holding that Congress was within its powers under the Commerce Clause in enacting § 922(g)).

Indeed, defendant has failed to cite more recent controlling authority on the issue of the constitutionality of §922(g).[2] For example, *Lopez*, *Morrison* and *Jones* were addressed and distinguished by the Second Circuit in *Santiago*. The court in *Santiago* found that the revised, post-*Lopez* version of § 922(g) "avoids the constitutional deficiency identified in *Lopez*" because it contains a requirement that the government demonstrate a link to interstate commerce. 238 F.3d at 216-17. In so holding, the court specifically found that "[u]nlike the statutes at issue in [*Jones, Lopez*, and *Morrison*], § 922(g) includes an express jurisdictional element requiring the government to provide evidence in each prosecution of a sufficient nexus between the charged offense and interstate or foreign commerce." *Id.* at 217; *see also Gaines*, 295 F.3d at 302 (citing *Santiago* and distinguishing *Morrison* and *Jones*). Furthermore, in *Bass*, the Court explicitly held that "the Government meets its burden [] if it demonstrates that the firearm received has previously traveled in interstate commerce." 404 U.S. at 350; *see also Scarborough v. United States*, 431 U.S. 563, 575-77 (1977) (interpreting predecessor statute to § 922(g)). The other cases cited by Noble are equally unavailing. *See United States v. Jones*, 16

---

[2] While the Court would ordinarily question defendant's failure to cite these cases in his memoranda, defendant's counsel indicated at oral argument that the motion to dismiss was made in an effort to preserve defendant's rights in the event the Supreme Court ultimately finds § 922(g) to be unconstitutional in light of *United States v. Lopez*, 514 U.S. 549 (1995) and other cases. (Tr. at 60-63.)

F.3d 487 (2d Cir. 1994) (vacating conviction where there was evidence that the gun *was* manufactured in New York at one time, and thus the government had not conclusively proven its travel in interstate commerce); *United States v. Coward*, 151 F. Supp. 2d 544, 551 (E.D. Pa. 2001) (questioning the viability of *Scarborough* in light of *Lopez*).

Clearly, the consistent authority of this Circuit recognizes the constitutionality of § 922(g). Accordingly, defendant's motion to dismiss the indictment on the grounds that § 922(g) is unconstitutional on its face is denied.

(b)  § 922(g) is Constitutional As Applied to Defendant

Defendant also raises an "as applied" challenge to the constitutionality of § 922(g). (Def.'s Mem. at 6-8.)

As discussed above, § 922(g)(1) makes it a crime for an individual who has been convicted of a felony to "possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  Assuming that the other elements — prior felony conviction and possession of a firearm — are met, the Second Circuit has held that the fact that a firearm was manufactured out of state "is generally sufficient to meet the interstate commerce element." *Jones*, 16 F.3d at 491.

The complaint asserts that defendant was convicted of a felony in 1983, and that a .40 caliber Hi-Point handgun was found in the crashed Jeep, which defendant had been driving before the crash and his subsequent arrest. (Compl. ¶¶ 2, 4.) The complaint also states that the .40 caliber Hi-Point handgun at issue "is not and has never been manufactured in the State of New York." (*Id.* ¶ 4.) Defendant has not contested the truth of those allegations; rather, defendant argues that his possession of a gun that previously traveled in interstate commerce is not sufficient to satisfy the commerce clause.

As discussed above, it is settled that where a gun was manufactured out of state but is found in-state, the "in or affecting commerce" prong of § 922(g) is satisfied. *Jones*, 16 F.3d at 491; *Sanders*, 35 F.3d at 62-63. Thus, the government's allegation that the gun found in defendant's possession was manufactured out of state satisfies the "in or affecting commerce" element. Accordingly, the Court finds that § 922(g) is constitutional as applied to defendant.

For these reasons, Noble's motion to dismiss the indictment is denied.

(c) Defendant Will Not Be Prejudiced by the Introduction of his Prior Felony Conviction at Trial

As part of his motion to dismiss, Noble also argues that he will be prejudiced at trial because § 922(g) takes away his right to an impartial jury by informing the jury that he has a prior felony conviction. (Def.'s Mem. at 5.) This argument also fails.

The Second Circuit has squarely held that "a district court cannot, by approving a stipulation of the parties, remove from the jury's consideration altogether the issue of defendant's prior conviction in an 18 U.S.C.

4

§ 922(g)(1) case," and that "no unfair prejudice can arise from the presentation of evidence of the fact of a prior felony conviction in a Section 922(g) case." *United States v. Belk,* 346 F.3d 305, 309 (2d Cir. 2003) (citing *United States v. Gilliam,* 994 F.2d 97, 100 (2d Cir. 1993)); *see also United States v. Johnson,* 505 F.3d 120, 124 (2d Cir. 2007) (reaffirming *Belk*). Against this clear controlling authority, defendant cites only one case from the Eighth Circuit — *United States v. Aldrich,* 169 F.3d 526 (8th Cir. 1999) — the facts of which are distinguishable from the facts of this case. In *Aldrich,* the government and the district court both agreed that the defendant's conviction under § 922(g) could not stand because the defendant had received an Iowa "Restoration of Rights" certificate related to his prior felony conviction. *Id.* at 527-28. No such fact is alleged here.

Moreover, in an effort to avoid the sort of prejudice raised by defendant, courts in this District routinely allow a defendant to stipulate to the *fact* of a prior felony conviction without discussion of or reference to the underlying facts or nature of the crime of conviction. *See United States v. Amante,* 418 F.3d 220, 224 (2d Cir. 2005) ("Where the government agrees to stipulate the fact of the prior felony without going into the underlying facts, there can be no unfair prejudice justifying bifurcation."); *Johnson,* 505 F.3d at 124 (finding no error in providing the jury with a stipulation of a prior felony conviction, along with a curative instruction that the jury may only use proof of the prior conviction to satisfy the prior-conviction element of the crime); *United States v. Cruz,* 343 F. Supp. 2d 226, 232 n.6 (S.D.N.Y. 2004); *United States v. Egipciaco,* No. 05 Cr. 202 (JGK), 2006 WL 928638, at *7 (S.D.N.Y. Apr. 7, 2006); *United States v. Boone,* No. 02 Cr. 1185 (RPP), 2004 WL 187151, at *4 (S.D.N.Y. Jan. 29, 2004).

Accordingly, the Court finds that defendant will suffer no unfair prejudice owing to the introduction of the prior felony conviction at trial.

### B. Defendant's Motion to Suppress the Firearm

Defendant also moves to suppress the firearm recovered from the Jeep. (*See* Def.'s Mem. at 10-15.) Because the recovery of the firearm falls squarely within the automobile exception to the warrant requirement, defendant's motion is denied.

#### 1. The Automobile Exception

Warrantless searches are "per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions." *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55 (1971). One of these exceptions is the "automobile exception," which provides that "police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Howard,* 489 F.3d 484, 492 (2d Cir. 2007); *see also United States v. Gaskin,* 364 F.3d 438, 456 (2d Cir. 2004) (citing *Pennsylvania v. Labron,* 518 U.S. 938, 940 (1996) (per curiam)).

Probable cause exists if, based on the totality of the circumstances, the officers performing the search have "knowledge or reasonably trustworthy information sufficient

5

to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Howard*, 489 F.3d at 491 (citing *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Probable cause does not demand certainty, but instead requires "only a fair probability that contraband or evidence of a crime will be found." *Gaskin*, 364 F.3d at 457 (citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). The Second Circuit has found that unprovoked flight is one of several factors to be considered when assessing the totality of the circumstances for probable cause. *See United States v. Baldwin*, 496 F.2d 215, 220 (2d Cir. 2007); *United States v. Muhammad*, 463 F.3d 115, 121 (2d Cir. 2006).

The automobile exception requires no exigency, and there is no requirement that the search of the car occur contemporaneously with its seizure or immobilization. *See United States v. Johns*, 469 U.S. 478, 484 (1985); *United States v. Harwood*, 998 F.2d 91, 96 (2d Cir. 1993); *see also United States v. Ross*, 456 U.S. 798, 807 (1982) (noting that the exception reflects "a reasoned application of the more general rule that if an individual gives the police probable cause to believe a vehicle is transporting contraband, he loses the right to proceed on his way without official interference."). Additionally, "ready mobility" does not mean that the car must be capable of being driven away for the exception to apply. Rather, it is the lesser expectation of privacy that results from ready mobility that gives rise to the exception. *See California v. Carney*, 471 U.S. 386, 391 (1985); *see also United States v. Fields*, 456 F.3d 519, 523-24 (5th Cir. 2006).

2. Analysis

Defendant argues in his memorandum of law that the police did not have "reasonable suspicion of criminal activity" on the part of the defendant, and thus "unlawfully pursued him." (Def.'s Mem. at 12.) He further argues that, at the time of the search of the Jeep, "the car was parked and not moving" (*id.* at 10), and that the search was not "an appropriate inventory search of the vehicle . . ." (*id.* at 12-13).

Here, the facts alleged in the complaint demonstrate that the police had an adequate basis on which to pursue defendant, and subsequently, probable cause to search the Jeep. The officers on patrol had received two radio calls indicating that shots had been fired in the vicinity of 4422 Edson Avenue in the Bronx, and that the suspect was traveling southbound in the Jeep on Baychester Road. After spotting a vehicle matching the description of the Jeep being driven by Noble and traveling south on Baychester Road, the police began to follow it. The driver sped up and began driving erratically. After briefly losing sight of the Jeep, the officers saw it crashed on the side of the road with the driver's door open. The defendant, having fled from the Jeep, was subsequently arrested at a nearby location. Under the totality of these circumstances, and pursuant to the automobile exception, the officers responding to the shooting clearly had probable cause to believe that the gun used in the shooting might be found in the car, thereby justifying the warrantless search. *See Howard*, 489 F.3d at 492; *Gaskin*, 364 F.3d at 456. Neither the fact that the car was "parked and not moving" nor the fact that the search was done after the arrest of defendant does anything to alter the

conclusion that the search was reasonable. *See Carney*, 471 U.S. at 391; *Fields*, 456 F.3d at 523-24 (upholding a search of a vehicle where defendant crashed his car, fled on foot, and was later arrested, finding that the car need not be mobile at the time of the search for the search to be valid).

Moreover, by abandoning the Jeep and taking flight on foot, Noble relinquished any reasonable expectation of privacy he might have had in the Jeep and its contents. *See United States v. Libbett*, No. 05 Cr. 6069, 2006 WL 2620049, at *10 (W.D.N.Y. Sept. 13, 2006) ("[The defendant] fled on foot, leaving the driver's door open and the engine running. [The defendant's] flight constituted an abandonment of the automobile, and a concomitant abandonment of any expectation of privacy he may have had in the vehicle."); *cf. United States v. Clarke*, No. 92 Cr. 1138 (SS), 1993 WL 478374, *2 (S.D.N.Y. Nov. 12, 1993) ("[D]efendants' flight from their vehicle after very brief valid questioning constituted a voluntary abandonment, not coercion, and the ensuing search of the vehicle was lawful.").

Defendant's motion contains no discussion of these exceptions or their application here, and defendant has put forth no cognizable theory as to why the exceptions should not apply. Accordingly, defendant's motion to suppress the gun is denied.

### C. Defendant's Motion to Suppress the Statements

Noble also moves to suppress the statements he made (1) in the police car on the way to the police station after his arrest, and (2) in an interview at the police station. (Def.'s Mem. at 13-14.) For the reasons that follow, this motion is denied.

1. Standard for Suppression of Statements

It is well established that statements made by a defendant in the course of custodial interrogation are inadmissible unless the questioning was proceeded by "procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The purpose of the warnings, commonly known as "*Miranda* warnings," is to "ensure that the person in custody has sufficient knowledge of his or her constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary." *United States v. Carter*, 489 F.3d 528, 534 (2d Cir. 2007).

"Interrogation" has been defined as both "express questioning" and the "functional equivalent" of questioning, which includes "any words or action on the part of police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Colon*, 835 F.2d 27, 30 (2d Cir. 1987) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)); *see also United States v. Gelzer*, 50 F.3d 1133, 1138 (2d Cir. 1995). Where statements are spontaneous — that is, where they are not the result of questioning or its functional equivalent — *Miranda* warnings are not necessary and the statements are not protected. *Miranda*, 384 U.S. at 478; *Innis*, 446 U.S. at 300-01.

Provided that the defendant is properly apprised of his *Miranda* rights, any waiver by the defendant of those rights is effective only

if the waiver is knowing, voluntary, and intelligent. *Carter*, 489 F.3d at 534-35. The government bears the burden of demonstrating waiver. *United States v. Scarpa*, 897 F.2d 63, 68 (2d Cir. 1990). While a post-warning waiver may be made expressly, via a written or oral communication in which the defendant expressly waives his rights, waiver may also be effective via "actions and words" that demonstrate an intent to waive. *See id.*

2. Analysis

(a) Statements Made by Noble on the Way to the Police Station

The Court held an evidentiary hearing on March 26, 2008 on defendant's motion to suppress his statements. At the hearing, the government offered the testimony of Sergeant Steven Chantel, who, along with an individual identified as Officer Dennin, assisted in transporting defendant from the scene of the arrest to the police station. (Tr. at 6-10.) Sergeant Chantel testified that he and Officer Dennin arrived at the scene of the arrest to find defendant being handcuffed on the sidewalk. (*Id.* at 8.) Officer Dennin then placed defendant in the back of his police car, and the two officers proceeded to drive defendant to the police station. (*Id.*) Sergeant Chantel testified that, during that drive, neither he nor Officer Dennin spoke to defendant. (*Id.* at 10.) However, Sergeant Chantel testified that, at some point during the drive, defendant started speaking, first asking repeatedly if he could have his shoes back, which he had lost at some point after the arrest but before being placed in the car. (*Id.* at 9-10, 12.) Sergeant Chantel testified that defendant, in the course of asking about his shoes, also asked "can I please have my gun?" (*Id.*) After hearing this, Sergeant Chantel testified that he looked at Officer Dennin and said something to the effect of "did he just say that?" (*Id.* at 9.) Sergeant Chantel testified that neither he nor Officer Dennin spoke to defendant after that, nor did defendant make any more statements. (*Id.* at 10.) Finally, Sergeant Chantel testified that, after they had arrived at the 47th precinct station, the officers escorted defendant into the building and put him in a holding cell.[3] (*Id.* at 10-11.)

Defendant did not testify at the hearing, and has not pointed to any evidence other than his own declaration in support of his motion. In that declaration, defendant asserts only that, subsequent to his arrest, he was "questioned by the police without properly being advised of [his] rights." (Noble Decl. ¶ 4.)

The Court credits the testimony of Sergeant Chantel over the conclusory assertions in defendant's affidavit. In crediting the officer's testimony, the Court expressly rejects defendant's implicit assertion that he was "questioned," especially because that assertion was not subject to cross-examination. *See United States v. Fuentes*, No. 07 Cr. 329 (SHS), 2007 WL 2319142, at *4 (S.D.N.Y. Aug. 10, 2007) (crediting the testimony of testifying

---

[3] Sergeant Chantel also testified that he prepared what is known as an "Unusual Occurrence Report" later that day relating to the arrest (the "UOR"). (Tr. at 20-30.) Sergeant Chantel testified that he has not been able to locate the UOR, but that it did not contain any reference to Noble's statements and was prepared in response to the fact that the incident was "newsworthy" in that it involved an individual who had fired a gun at another individual. (*Id.* at 21, 28-29.)

8

witnesses over the sworn statement of the defendant regarding whether he gave consent); *United States v. Juliano*, No. 99 Cr. 1197 (AGS), 2000 WL 1206745, at *3 n.1 (S.D.N.Y. Aug. 24, 2000) (affording less weight to conclusory affidavit submitted by defendant where the court could not assess the defendant's credibility due to his decision not to testify, and the testimony of the government's witnesses was "forthright and truthful"). The Court finds that neither Sergeant Chantel nor Officer Dennin questioned defendant in the car nor subjected him to the "functional equivalent" of questioning. *See Colon*, 835 F.2d at 30. To the contrary, the testimony established that defendant's statement in the police car was spontaneous and voluntary.

The Court has found no authority, and defendant has not pointed to any, to support the assertion that the officers in the car were under some affirmative duty to interrupt defendant and tell him not to speak, or to otherwise apprise him of his rights in the absence of questioning. (*See* Tr. at 67-69.) To the contrary, "[s]pontaneous statements which are not the result of 'official interrogation' have never been subject to *Miranda*'s strictures." *Lineberger v. Conway*, No. 03 Civ. 1645 (KMW), 2008 WL 513203, at *6 (S.D.N.Y. Feb. 26, 2008) (quoting *Wolfrath v. La Vallee*, 576 F.2d 965, 973 n.6 (2d Cir. 1978)); *cf. Colon*, 835 F.2d at 30 (holding spontaneous statements admissible in the absence of interrogation) (citations omitted).

Accordingly, defendant's motion to suppress the statements he made in the police car while in transit to the police station is denied.

(b) Post-Arrest Interview Statements Made by Noble

Noble argues that statements he gave at the police precinct should be suppressed because he was not properly advised of his *Miranda* rights. (Def.'s Mem. at 13-14.)

At the hearing, the government offered the testimony of Special Agent Eric Baldus, an agent with the DEA, who, along with NYPD Sergeant Scott Mackay, questioned defendant at the 47th precinct. (Tr. at 38-39.) Agent Baldus testified that after he and Sergeant Mackay introduced themselves to defendant, Agent Baldus asked Sergeant Mackay if the defendant had been "*Mirandized*." (*Id.* at 40.) Agent Baldus testified that when Sergeant Mackay replied that he did not know, Agent Baldus proceeded to read defendant his *Miranda* rights from a card that Agent Baldus had in his possession. (*Id.* at 40-41.) Agent Baldus testified that after reading defendant his *Miranda* rights from the card, he asked defendant if he understood his rights, and defendant indicated verbally that he did. (*Id.* at 42.) Agent Baldus testified that defendant never asked for a lawyer, and never indicated that he wished to stop the questioning or that he was unsure of his rights. (*Id.* at 42-43.) Again, defendant did not testify at the hearing, and has submitted only his own declaration in support of his motion. In his declaration, defendant asserts that, subsequent to his arrest, he was "questioned by the police without properly being advised of [his] rights" and that he never signed "a written waiver of rights form." (Noble Decl. ¶¶ 4-5.)

Viewing the totality of the circumstances, the Court credits the testimony of Agent

Baldus and finds that defendant was properly appraised of his *Miranda* rights, and executed a knowing, voluntary, and intelligent oral waiver of those rights. *See Carter*, 489 F.3d at 534-35. In so doing, the Court rejects defendant's assertion that he was not advised of his rights, and notes that defendant has alleged no facts to suggest that the consent given to the agents was somehow invalid or coerced. Moreover, defendant's assertion that he did not sign a written waiver of rights form has no legal significance here. A waiver may be oral, written, or implicit so long as the waiver is voluntarily made given the totality of the circumstances. *Gaines*, 295 F.3d at 297-98; *Scarpa*, 897 F.2d at 68. Finally, defendant has cited no authority, and the Court has not located any, in support of his counsel's assertion at oral argument that Agent Baldus was required to stop after each *Miranda* right was read, in order to determine whether defendant understood each particular right, rather than reading them all at once. (*See* Tr. at 69-71.)

Accordingly, Noble's motion to suppress the statements made during the interview at the 47th precinct is denied.

D. Defendant's Motion for Production of 404(b), *Brady*, *Giglio*, and § 3500 Material

Defendant requests that the Court order the government to produce any evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. (Def.'s Mem. at 9.) Defendant's notice of motion also requests that the Court order the production of all exculpatory and impeachment material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Bagley*, 473 U.S. 667 (1985), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500, though defendant's memorandum does not separately address these requests.

In response to defendant's request, the government states that it will provide notice of any Rule 404(b) evidence it intends to offer at trial no later than fourteen days prior to trial. (*See* Gov't Opp. at 8.) The government also agrees to produce any *Giglio* and § 3500 material "on the Friday before trial, consistent with its standard practice" and the standard practice in this District. (Gov't Opp. at 8); *see also United States v. Perez*, 940 F. Supp. 540, 553 (S.D.N.Y. 1996). As to the production of *Brady*, *Bagley*, and *Giglio* material, the government has stated that it is unaware of any *Brady* material but "is mindful of its continuing obligations and will promptly produce any such material should it become available." (Gov't Opp. at 8.)

The prosecution's duty to "disclose evidence favorable to an accused when such evidence is material to guilt or punishment" is undisputed. *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1972)). However, the government "need not provide *Brady* and *Giglio* materials immediately" but merely "in time for [their] effective use." *Id.* at 144. Pretrial requests for discovery orders are properly denied where the government makes a good-faith representation as to its knowledge of and compliance with *Brady* obligations. *See Perez*, 940 F. Supp. at 553. To the extent that defendant is requesting statements made by prospective government trial witnesses pursuant to 18 U.S.C. § 3500, it is also clear that "the Government is under no obligation to produce Jencks Act material until after a witness has testified on direct

examination at trial," and "district courts lack the authority to compel early disclosure of Jencks Act material." *United States v. Tavarez*, 518 F. Supp. 2d 600, 603 (S.D.N.Y. 2007) (citing *In re United States*, 834 F.2d 283, 287 (2d Cir. 1987)). In any event, the government has agreed to produce any § 3500 material "on the Friday before trial, consistent with its standard practice." (Gov't Opp. at 8.)

Given that the government has agreed to produce the requested materials, defendant's request for an order directing production of this material is denied without prejudice to renewal should the government fail to produce the materials, if any, in a timely fashion.

## III. CONCLUSION

For the foregoing reasons, Noble's motions are DENIED in their entirety. The Clerk of the Court is directed to terminate the motion docketed at document number 15.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: May 7, 2008
New York, New York

* * *

The United States of America is represented in this matter by Assistant United States Attorney Rebecca Ricigliano, Esq., and Assistant United States Attorney Brendan McGuire, Esq., United States Attorney's Office, One Saint Andrew's Plaza, New York, New York 10007. Defendant Bryan Noble is represented by Barry Krinsky, Esq., 50 Court Street, Brooklyn, New York 11201.